IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HERA, LLC, f/k/a HRY, LLC and<br>DANIEL RABIN,<br><br>                             **Plaintiffs,**<br><br>v.<br><br>BILL GOSLING OUTSOURCING CORP.,<br><br>                             **Defendant.** | Case No._____ |

## CIVIL COMPLAINT

COMES NOW, Plaintiffs HERA, LLC f/k/a HRY, LLC, and Daniel Rabin and for their complaint against Defendant, Bill Gosling Outsourcing Corp., state as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff HERA, LLC f/k/a HRY, LLC, is a Kansas Limited Liability Company located at 15280 Metcalf Ave., Overland Park, KS 66223.

2. Plaintiff Daniel Rabin ("Rabin") is a Kansas resident and lives in Johnson County, Kansas.

3. Defendant Bill Gosling Outsourcing Corp., ("BGO") is a Virginia corporation and may be served through its registered agent, Corporation Service Company, 100 Shocked Slip Fl. 2, Richmond, VA 23219.

4. Jurisdiction of the Court is appropriate under 28 U.S.C. §1332(a)(1) because this is a civil action between citizens of different states.

5. The amount in controversy exceeds $75,000.00

6. Under Fed. R. Civ. P. 4(k)(1)(A), the Court has personal jurisdiction over any Defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where

1

the district is located. Defendant BGO committed the torts of fraud, negligence and breach of fiduciary duty as it relates to Plaintiffs who suffered damage in Kansas.

7. The Court has personal jurisdiction over Defendant through Kan. Stat. Ann. § 60-304, Kan. Stat. Ann. § 17-7307 and Fed. R. Civ. P. 4(k)(1)(A).

8. Because a substantial portion of the acts or omissions giving rise to the claims against Defendant occurred with the District of Kansas, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## Facts Common to All Counts

9. Plaintiffs hereby allege and incorporate herein by reference Paragraphs 1-8 hereof as if fully set out herein.

10. On January 15, 2013, Allied Global Holdings, Inc. ("AGHI") and 8399280 Canada, Inc. ("Canada Corp.") entered into an Agreement to form the AIC Pacman Limited Partnership ("Packman").

11. Rabin and his business partner, Jason Henning ("Henning"), desired to organize, set up and operate a call center in the Philippines ("Call Center").

12. In connection with Call Center operations in the Philippines, Henning has substantial experience in establishing and operating such a Call Center, having over seven (7) years' experience in the Philippines working with a large multinational corporation and overseeing over 1,000 employees.

13. Rabin has significant call center experience and was willing and able, among other things, to provide funding, legal advice and clients to a new Philippines Call Center operation.

14. AGHI desired to operate a customer call center in the Philippines.

15. AGHI did not have experience in customer call center operations in the Philippines.

16. AGHI recognized Rabin and Henning's valuable experience in the operating a customer call centers and specifically Henning's experience in organizing, licensing and operating a call center in the Philippines.

17. In connection with AGHI's mission to own and operate the Call Center, on April 1, 2013, Rabin and Henning, by and through HRY, LLC, entered into a Shareholder Agreement with AGHI for the purpose of Rabin's/ HRY, LLC's investment in and purchase of 41.67% of the shares in Canada Corp.

18. Following Rabin's/ HRY, LLC's investment in Canada Corp., Canada Corp, by and through Packman, formed AIC Phil, LLC ("AICP") for the purpose of opening and operating a Call Center in the Philippines.

19. The Call Center was to remain a "stand alone" venture for the parties, with the exception of standard industry practices on matters such as data management, data storage and invoicing.

20. At all relevant times, David Rae served as the officer or managing member in control of AGHI, Canada Corp., Pacman and AICP.

21. Upon information and belief, AGHI changed its corporate name to Bill Gosling Outsourcing Corp. ("BGO"), with David Rae remaining as chief executive officer.

22. BGO is the successor to AGHI.

23. In 2018, HRY, LLC changed its name to HERA, LLC.

24. HERA, LLC is the successor to HRY, LLC.[1]

---

[1] For purposes of this pleading, Petitioner HERA, LLC f/k/a HRY, LLC will be referred to herein as "HRY".

3

25. In 2019 and for its own informational purposes, HRY retained Corporate Advisory Solutions ("CAS") to review the financial performance of AICP and the Call Center to determine the fair market value of these assets and operation as of May 31, 2019.

26. CAS concluded AICP's fair market value, as of May 31, 2019 to be not less than $9,651,850.00 ("CAS Appraisal").

27. Based upon the CAS Appraisal, HRY's 41.67% interest is valued at $4,024,821.45, excluding retained earnings, advance accruals, insurance reimbursements, and other add backs.

28. On October 28, 2019, David Rae delivered a letter on behalf of BGO therein notifying HRY and Rabin, of BGO's intent to sell BGO's assets, including AICP and the Call Center to Owner Resource Group (ORG), a private equity investment firm, with an anticipated closing by year end 2019.

29. David Rae's letter states, "The private equity group understands that the Philippines production location assets are currently owned by AIC Phil, LLC which is 100% owned by AIC Pacman Limited Partnership, which, in turn, is owned 58.3 by [BGO] and 41.7% by [HRY]". *David Rae Letter to HRY,* October 28, 2019.

30. David Rae's letter further stated that to make the sale to ORG easier, "we believe that a buyout of your ownership interest in AIC Packman Limited partnership is best done prior to the closing of our change of control". *Id.*

31. Finally, David Rae asserts BGO's offer to purchase HRY's interest in AIC Pacman, including AICP and the Call Center (collectively the "Assets"), for the sum of $1,050,000.00 ("BGO Offer") and thereafter BGO will sell the Assets through its private transaction with ORG.

32. The BGO Offer does not meet the industry standard valuation of 7-times Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA Value") or CAS' recent appraisal value of 5 to 6 times EBITDA

33. The CAS Appraisal is substantially in accord with EBITDA Value.

34. HRY, by and through Rabin and CAS, conveyed the CAS Appraisal and made demand for HRY's 41.67% interest at $4,705,605.00.

35. BGO undervaluation of the Assets for the purchase from HRY is its scheme to receive a windfall upon the sale of BGO to ORG.

36. To the detriment of HRY and Rabin, BGO, by and through David Rae, refused and declined to properly value or apply the EBITDA Value to the Assets for its proposed sale.

37. HRY demanded an updated balance sheet and financial information..

38. BGO, acting in bad faith, failed and refused to provide HRY with the updated balance sheet and financial information.

39. HRY demanded BGO supply a copy of the Letter of Intent and any agreement(s) relating to the terms of its transaction with ORG.

40. BGO, acting in bad faith, failed and refused to provide the Letter of Intent and agreement(s) related to the ORG transaction.

41. HRY demanded BGO's calculation basis for its offer of to purchase HRY's interest in the Assets.

42. BGO, acting in bad faith, failed and refused to provide the calculation basis for its offer to purchase HRY's interest in the Assets.

## **COUNT I – BREACH OF FIDUCIARY DUTY**

43. Plaintiffs hereby allege and incorporate herein by reference Paragraphs 1-42 hereof as if fully set out herein.

44. At all times relevant hereto, BGO controlled the Assets for the benefit of Plaintiffs.

45. Whereas David Rae exercises control over BGO, AICP, Pacman, Canada Corp., Plaintiffs are subject to the control of and influence of BGO, which places BGO in a position of superiority over Plaintiffs.

46. At all times relevant hereto, BGO, by and through David Rae, owed a fiduciary duty to the members and shareholder owners and beneficiaries of AICP, Pacman, Canada Corp. including HRY and Rabin regarding the sale of the Assets.

47. Despite HRY's request for updated balance sheet and financial information, the Letter of Intent and any agreement(s) relating to the terms of its transaction with ORG, and BGO's calculation basis for its offer of to purchase HRY's interest in the Assets, BGO, acting in bad faith, failed and refused to provide HRY with the requested information.

48. BGO, by and through David Rae, has breached its fiduciary duty and exercise reasonable care, skill and caution in supplying information to investors, namely HRY, managing Assets by undervaluing the same for the benefit of itself and to the detriment of all member and shareholder owners or beneficiaries of AICP, Pacman, Canada Corp and more specifically the Plaintiffs.

49. If the BGO transaction with ORG is allowed to proceed without a proper allocation of sale proceeds for HRY's interest, HRY and Rabin will suffer irreparable harm, loss, and injury.

50. BGO's breach of its fiduciary duty caused harm to Plaintiffs in losses in excess of $4,705,605.00, in an amount to be proven at trial.

51. HRY/Rabin requests the Court to stay the conclusion of the transaction between BGO and ORG or, in the alternative, require a proper allocation of sale proceeds to be paid by ORG to BGO for the benefit or HRY/Rabin.

WHEREFORE, Plaintiffs respectfully request this Court order the proceeds of BGO's sale to ORG be impounded by the Court until a final judgment by this Court is entered, for a complete accounting by BGO for all the Assets, for delivery of all BGO, AICP, Pacman, and Canada Corp. financial records related to the Assets, for judgment against BGO in an amount to be determined at trial in excess of $75,000.00, together with legal fees and costs herein incurred, and for such other and further relief as this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

52. Plaintiffs hereby allege and incorporate herein by reference Paragraphs 1-51 hereof as if fully set out herein.

53. BGO refused and failed to provide HRY with updated balance sheet and financial information, the Letter of Intent and any agreement(s) relating to the terms of its transaction with ORG, and its calculation basis for its offer of to purchase HRY's interest in the Assets.

54. BGO's failure to provide the information to HRY demonstrated BGO's knowing and intentional undervaluation the Assets.

55. As a result of BGO's undervaluation and as the beneficiary of the transaction with ORG, BGO's retains the benefit of the CAS Appraisal and HRY and Rabin's share of the sale proceeds.

56. BGO's actions demonstrate bad faith.

57. Under the circumstances, BGO's retention of CAS Appraisal value of the Assets, against the interests of HRY and Rabin is knowingly and intentionally wrongful and, if allow to proceed, would lead to unjust enrichment of BGO.

58. If the BGO transaction with ORG is allowed to proceed without a proper allocation of sale proceeds for the HRY interest, HRY will suffer irreparable harm, loss, and injury.

59. Plaintiffs request the Court to stay the conclusion of the transaction between BGO and ORG or, in the alternative, require a proper allocation of sale proceeds to be paid by ORG to BGO for the benefit or HRY/Rabin.

WHEREFORE, Plaintiffs respectfully request this Court order the proceeds of BGO's sale to ORG be impounded by the Court until a final judgment by this Court is entered, for a complete accounting by BGO for all the Assets, for delivery of all BGO, AICP, Pacman, and Canada Corp. financial records related to the Assets, for judgment against BGO in an amount to be determined at trial in excess of $75,000.00, together with legal fees and costs herein incurred, and for such other and further relief as this Court deems just and proper.

## **COUNT III – FRAUD BY SILENCE**

60. Plaintiffs hereby allege and incorporate herein by reference Paragraphs 1-59 hereof as if fully set out herein.

61. In November 2018, BGO, by and through David Rae, David Gallagher and Joe Fanutti, met with Rabin and David Rae informed Rabin that he thought the value of the Assets on the market was "about 7 times" EBITDA.

62. However, BGO secretly planned to refuse to apply EBITDA Value, with a dilution for minority share, even though this is a recognized industry standard.

8

63. BGO's refusal to apply EBITDA Value is a material fact.

64. BGO, by and through David Rae, had knowledge of its intent not to apply EBITDA Value and the Plaintiffs did not have and could not have discovered this information by the exercise of reasonable diligence.

65. BGO was under an obligation to communicate its intent not to apply EBITDA Value to the Plaintiffs.

66. BGO, by and through David Rae, intentionally failed to communicate its intent not to apply EBITDA Value to the Plaintiffs.

67. Plaintiffs justifiably relied upon BGO and David Rae to communicate its intent not to apply EBITDA Value.

68. Plaintiffs sustained damages as a result of the Defendant's failure to communicate the material facts to the Plaintiffs in that:

   a. The BGO Offer does not meet the industry standard EBITDA Value;

   b. BGO's undervaluation of the Assets is for the purpose of purchasing the same from HRY so that it will receive a windfall upon the sale of BGO to ORG; and

   c. BGO's has or will retain proceeds from the sale of the Assets to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court order the proceeds of BGO's sale to ORG be impounded by the Court until a final judgment by this Court is entered, for a complete accounting by BGO for all the Assets, for delivery of all BGO, AICP, Pacman, and Canada Corp. financial records related to the Assets, for judgment against BGO in an amount to be determined at trial in excess of $75,000.00, plus punitive damages, together with legal fees

and costs herein incurred, and for such other and further relief as this Court deems just and proper.

## COUNT IV – NEGLIGENT MISREPRESENTATION

69. Plaintiffs hereby allege and incorporate herein by reference Paragraphs 1-68 hereof as if fully set out herein.

70. BGO, HRY and Rabin have a pecuniary interest in the Assets.

71. In November 2018, BGO, by and through David Rae, David Gallagher and Joe Fanutti, met with Rabin and David Rae informed Rabin that he thought the value of the Assets on the market was "about 7 times" EBITDA.

72. The information supplied by BGO is false information because BGO planned to refuse to apply EBITDA Value, with a dilution for minority share, even though this is a recognized industry standard.

73. BGO, by and through David Rae, supplied the false information to HRY and Rabin and failed to exercise reasonable care or competence in obtaining or communicating the false information.

74. HRY and Rabin relied upon the BGO's statement that it valued the Assets at the EBITDA Value and HRY and Rabin are the person(s) for whose benefit and guidance BGO supplied the information

75. Plaintiffs sustained damages as a result of the BGO's negligent misrepresentation of \material facts to the Plaintiffs in that:

   a. The BGO Offer does not meet the industry standard EBITDA Value;

   b. BGO's undervaluation of the Assets is for the purpose of purchasing the same from HRY so that it will receive a windfall upon the sale of BGO to ORG; and

    c.    BGO's has or will retain proceeds from the sale of the Assets to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs respectfully request this Court order the proceeds of BGO's sale to ORG be impounded by the Court until a final judgment by this Court is entered, for a complete accounting by BGO for all the Assets, for delivery of all BGO, AICP, Pacman, and Canada Corp. financial records related to the Assets, for judgment against BGO in an amount to be determined at trial in excess of $75,000.00, plus punitive damages, together with legal fees and costs herein incurred, and for such other and further relief as this Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Kansas City, Kansas as the location for the trial in this matter.

## REQUEST FOR TRIAL BY JURY

Plaintiffs request trial by jury.

Respectfully submitted,

SANDBERG PHOENIX & von GONTARD P.C

By: s/*Michele M. O'Malley*
Michele O'Malley KS#20760
Meghan M. Sholy KS #28343
4600 Madison Ave. Suite 1000
Kansas City, MO 64112
Tel: 816-627-5546
Fax: 816-627-5532
momalley@sandbergphoenix.com
msholy@sandbergphoenix.com
Attorneys for Plaintiffs